UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIMBERLY M.,

            Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

CASE NO. 2:19-CV-1035-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred by not providing specific, legitimate reasons for discounting the opinion of Plaintiff's treating neurologist Dr. May. Had the ALJ properly considered this evidence, the RFC may have contained additional limitations.

Accordingly, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On March 18, 2015, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of February 28, 2014. AR 64, 188-89. Her application was denied upon initial administrative review and on reconsideration. AR 64, 104-06, 113-14. A hearing was held before ALJ Larry Kennedy on October 26, 2017. AR 12-60. In a decision dated March 13, 2018, the ALJ found that Plaintiff was not disabled. AR 61-78. The Social Security Appeals Council denied Plaintiff's request for review on May 7, 2019. AR 6-11. The ALJ's decision of March 13, 2018 is the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to properly assess opinion evidence from treating neurologist Eugene May, M.D., and examining sources Glenn Goodwin, Ph.D. and Theodore Becker, Ph.D.; and (2) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. Dkt. 10, pp. 3-18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.     Whether the ALJ properly evaluated the medical opinion evidence.**

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

**A.     Dr. May.**

In early 2014, Dr. May submitted several short-term disability assessments stating that Plaintiff would be unable to return to work due to an exacerbation of her multiple sclerosis symptoms. AR 306, 310, 317, 320.

In July 2014, Dr. May submitted an assessment in connection with Plaintiff's application for private disability insurance benefits. AR 687-88, 690. Dr. May diagnosed Plaintiff with multiple sclerosis, and noted that Plaintiff reported symptoms of fatigue, cognitive difficulties, and paresthesia in both hands. AR 687. Dr. May opined that Plaintiff would require flexible shift hours, would need to avoid prolonged sitting and keyboard use, and would be unable to work for

more than 24 hours per week or on consecutive days. AR 688. Dr. May estimated that Plaintiff's work-related functional limitations would persist indefinitely. AR 688.

In November 2016, Dr. May submitted another assessment in connection with Plaintiff's private disability claim, assessing identical functional limitations, but diagnosing Plaintiff with the additional impairments of narcolepsy and migraine headaches. AR 548-50, 689, 691-92.

In May 2017, Dr. May submitted a more detailed medical source statement. AR 551-54. Dr. May assessed Plaintiff as being able to lift and carry 10 pounds occasionally and 10 pounds frequently, stand for between 3 and 4 hours in an 8-hour day, walk less than 2 hours, and sit, stand and/or walk for between 2 and 3 hours in an 8-hour day. AR 551. Dr. May further opined that Plaintiff would likely be absent from work for more than 5 days a month due to pain, and would also be late to work and require unscheduled breaks for more than 5 days per month. AR 552. Dr. May opined that Plaintiff would be unable to work due to her symptoms, and stated that Plaintiff's impairments would impose "severe" restrictions on her productivity and ability to persist and maintain pace. AR 552-54.

Plaintiff challenges the ALJ's evaluation of Dr. May 2017 opinion.[1] Dkt. 10, pp. 4-8. The ALJ assigned "slight weight" to Dr. May's opinion, reasoning that: (1) Dr. May's opinion was inconsistent with objective medical findings and the medical record as a whole; (2) Dr. May typically only saw Plaintiff once a year, and had limited opportunities to observe her functioning; (3) Dr. May did not cite any clinical findings or other objective evidence to support his opinions; (4) Dr. May's opinion that Plaintiff would need to take extra breaks and miss work are based on Plaintiff's self-reports; (5) Dr. May's opinion that Plaintiff could stand for between 3 and 4 hours

---

[1] In the hearing decision, the ALJ states that Dr. May's May 2017 medical source statement was rendered in November 2016, possibly because the opinion notes that Plaintiff's last evaluation was conducted in November 2016. AR 74, 551.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

a day and walk for less than 3 hours is inconsistent with his opinion that Plaintiff could stand and walk for a combined total for between 2 and 3 hours, and Dr. May's explanation for this apparent inconsistency is unconvincing; and (6) the limitations in Dr. May's opinion are inconsistent with Plaintiff's use of a power drill, work that she did to improve a rental property, and her lengthy drives to eastern Washington. AR 74-75.

With respect to the first reason, an ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But an ALJ cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ's conclusion that Dr. May's opinion is inconsistent with "objective medical findings", the "medical record as a whole", and "routine findings" does not identify which of the limitations assessed by Dr. May are inconsistent with the medical record or why, and the ALJ's conclusion cannot serve as a specific, legitimate reason for discounting Dr. May's opinion. AR 74-75; *see Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."); *see also McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion because it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

As for the ALJ's second reason, the fact that a physician has limited interaction with a disability claimant can serve as a specific, legitimate reason for discounting that physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated

you and the more times you have been seen by a treating source, the more weight [the Social Security Administration] will give to the source's medical opinion.").

The record does not support the ALJ's conclusion that Dr. May had only "limited" opportunities to observe Plaintiff's functioning. In May 2011, Dr. May stated that he began treating Plaintiff for multiple sclerosis in 2002. AR 441. As such, Dr. May had the opportunity to observe the progression of Plaintiff's impairment long before her alleged onset date of February 28, 2014. Further, Dr. May has examined Plaintiff on no fewer than 8 occasions since her alleged onset date. AR 298-99, 300-02, 303-05, 306-08, 309-10, 375-76, 624-25, 631-32. Dr. May has a lengthy treating relationship with Plaintiff, and had numerous opportunities to examine her. The Court also notes Dr. May's 2011 observation that patients with multiple sclerosis "are not going to come to the office for all of their MS attacks" and that physicians treating patients with multiple sclerosis will often communicate with them via telephone and write prescriptions for patients when they are experiencing an exacerbation of their symptoms. AR 444. As such, it is possible that Plaintiff experienced more symptom flare-ups than are indicated in the record. Even if the medical record did contain gaps in Dr. May's treatment of Plaintiff, this would not necessarily mean that Plaintiff was not experiencing a flare-up in her symptoms. As such, the ALJ erred in discounting Dr. May's opinion because he only had a "limited basis" for his opinion. AR 75.

Similarly, the ALJ's third reason for rejecting Dr. May's opinion - the fact that Dr. May did not "cite any clinical findings or other objective evidence to support his opinions" - cannot serve as a specific and legitimate reason for discounting Dr. May's opinion, given that Dr. May clearly based his opinion on a lengthy treatment relationship and multiple in-person examinations.

As for the ALJ's fourth reason, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

The ALJ does not cite, and the record does not contain, any evidence to support the ALJ's conclusion that Dr. May based his opinion concerning Plaintiff's need to take unscheduled breaks and miss work more than 5 times per month largely on Plaintiff's subjective allegations.

With respect to the ALJ's fifth reason, a finding that a medical opinion contains internal inconsistencies can serve as a specific, legitimate reason for discounting it. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion).

On May 18, 2017, Plaintiff's representative sent a letter to Dr. May asking him to explain why his finding that Plaintiff could stand for between 3 and 4 hours a day and walk for less than 3 hours was not inconsistent with his opinion that Plaintiff could stand and walk for a combined total of between 2 and 3 hours. AR 555. On May 19, 2017, Dr. May responded by saying that his opinion was internally consistent, and noting that in Plaintiff's case, standing and walking repetitively requires more energy than simply standing or walking. AR 556. The ALJ stated that

Dr. May's explanation was "unconvincing" but did not explain the reasoning behind this conclusion, and it is not obvious why Dr. May's explanation is unpersuasive. AR 75; *see Blakes*, 331 F.3d at 569. Accordingly, this alleged inconsistency cannot serve as a specific, legitimate reason for discounting Dr. May's opinion.

As for the ALJ's sixth and final reason, an ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities.").

Here, the ALJ cited Plaintiff's use of a power drill, work that she did to improve a rental property, and her lengthy drives to eastern Washington as being inconsistent with Plaintiff's allegations. AR 75.

1    During the hearing, Plaintiff testified that she owns several travel trailers and a small

2 cottage in eastern Washington. AR 26. Plaintiff testified that she had hoped to renovate the

3 trailers and rent them to people "glamping" (glamorous camping) in the area, but that the

4 upgrades were too much work for her. AR 26-27.

5    Plaintiff testified that she communicated with the county to acquire a permit for her

6 cottage, but that she hired people to connect the cottage and trailers to electricity and install

7 septic systems. AR 27-28. Plaintiff testified that she has not made further upgrades or rented the

8 properties because the renovations ended up being a much bigger undertaking than she initially

9 thought, and she was physically unable to complete the work. AR 29, 35. Plaintiff stated that the

10 only physical labor she performed on the properties involved cleaning out birdhouses, putting

11 covers on the trailers in preparation for winter, and planting a few plants. AR 29-30. Plaintiff

12 stated that she is unable to garden anymore, and hires someone to do her yardwork. AR 30.

13    In May 2014, Plaintiff began having pain in her elbow after using a power drill. AR 763.

14 Plaintiff testified that she used the power drill to re-insert fallen screws, hang pictures and

15 curtains in her cottage, and install coat hooks. AR 31-32. In November 2014, Plaintiff told her

16 physician that she was "working like crazy" to get her properties ready. AR 355.

17    Plaintiff testified that it takes 3 hours and 15 minutes to drive from her primary residence

18 to the site of her cottage and trailers. AR 30. Plaintiff stated that she would typically travel there

19 twice a month, staying for about 4 days at a time. *Id.* Plaintiff stated that she feels better when

20 visiting eastern Washington, and enjoys the scenery and taking photographs of local wildlife. AR

21 30-31.

22    Plaintiff testified that when she drives to her properties, she does not drive straight there,

23 but stops once an hour because her back and hips get tight and painful and her hands go numb.

24

AR 44. Plaintiff stated that she keeps pillows in her car for lumbar support, and that towards the end of her journey she has significant fatigue and pain in her legs. AR 44-45. Plaintiff further testified that since she began experiencing numbness in her hands, she is unable to make the trip herself, and travels with her boyfriend, who drives either all the way there or two-thirds of the way. *Id.*

If the record supported the ALJ's conclusion that Plaintiff had performed extensive, physically demanding renovations on her properties and was able to complete a lengthy car trip on a regular basis, this could serve as a specific, legitimate reason for discounting Dr. May's opinion. However, the record is clear that Plaintiff performed no physically demanding work on her properties, that her use of a power drill was used for routine home repairs and renovations, and that she had significant difficulty driving from her home to eastern Washington.

As such, the ALJ has not provided any specific, legitimate reasons for discounting Dr. May's opinion.

**B.    Dr. Goodwin and Dr. Becker.**

The ALJ assigned "no weight" to the opinions of Dr. Goodwin, Dr. Becker, and several other examining sources who offered opinions concerning Plaintiff's functioning before her alleged onset date. AR 75-76. The ALJ reasoned that these assessments, conducted in 2010 and 2011, significantly pre-date Plaintiff's 2014 alleged onset date, were unable to consider subsequent developments in Plaintiff's impairments, and had little relevance for determining whether Plaintiff was disabled after her alleged onset date. *Id.*

The ALJ also reasoned that these assessments were based on standards used by a private disability insurance company to determine disability, and are of no value in determining whether Plaintiff is disabled under Social Security regulations. *Id.*

Medical opinions rendered long before the period at issue can be of limited probative value in ascertaining a claimant's functional capacity after her alleged onset date. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). The assessments in question indicate that during much of the period before Plaintiff's alleged onset date, she was still working part-time, often at substantial gainful activity levels. AR 198, 392, 400-01, 420-23, 436-37, 442. While these assessments are useful for charting the progression of Plaintiff's impairments, they are of limited value in ascertaining Plaintiff's functional capacity after her alleged onset date, when her condition appears to have worsened. As such, the Court cannot say that the ALJ erred in discounting these assessments.

Any error with respect to the ALJ's other reason for rejecting these assessments would be harmless, because the ALJ has provided a specific, legitimate reason for discounting them. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

**II.  Whether the ALJ properly evaluated Plaintiff's testimony.**

Plaintiff maintains that the ALJ erred in evaluating her subjective symptom allegations. Dkt. 10, pp. 13-18. Because Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of the medical evidence may impact his assessment of Plaintiff's subjective testimony, the ALJ shall reconsider Plaintiff's subjective symptom testimony as necessary on remand.

**III. Remedy.**

Plaintiff argues that the ALJ erred and that this case should be remanded for an award of benefits. Dkt. 10, p. 18. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The Court has determined that the ALJ must re-evaluate Dr. May's opinion. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 27th day of January, 2020.

*/s/ David W. Christel*
David W. Christel
United States Magistrate Judge